## *Paul Schenk and Henry Ten Broeck* v. *Melanchton Lloyd Woolsey.*

IN *scire facias*, to revive two judgments, one for
£4,224, the other for £1,718, obtained in 1783, in-
quests had been taken at the sittings in *Decem-
ber*, 1803.

*D. A. Ogden*, under an agreement that the appli-
cation should be considered as in time, moved to set
them aside on affidavits, which contained in substance
these facts.

May Term,
1805.

The defendant, who lives at *Platsburg* in the county of *Clinton*, was in 1785, duly discharged under the then insolvent law of the state. In *February*, 1803, the declarations were filed, to which payment was pleaded, with notices subjoined of giving the discharge, &c. in evidence ; but as, on procuring a copy of the proceedings under the insolvent law, the discharge itself could not be found, the attorney of the defendant wrote to him in the *August* following, communicating this circumstance, and requesting him to make inquiry after it. On the cause being noticed for trial on the 12th of *December* in that year, the defendant's attorney again wrote to him, repeating the contents of his former letter ; and urging him to attend personally, that measures might be taken to procure the discharge, or substantiate by parol evidence its former existence and loss. The first of these letters did not reach the defendant till the middle of *September*, the latter not till the 29th of *November*, then next. To each of these the defendant replied, stating that in consequence of a fractured leg, he was utterly unable to travel, and desiring the trial to be postponed till the *February* following, as, by that time, he hoped to be able to procure the discharge, which had been given to Mr. *Du Boys*, the then sheriff of *Dutchess*, to warrant his release from confinement. The first of these answers never came to hand, and the latter which was received bore date on the 18th of *December;* but though the discharge itself was not found, the attorney employed for the insolvent, who was also assignee of his estate, swore that the discharge had been obtained on a due and full adherence to the requisites of the act, and that he was then petitioning congress for the lands to which

the defendant was entitled, as an officer in the revo-
lutionary army, in consequence of their having pass-
ed by the assignment of the insolvent's estate. None
of these circumstances, however, appeared when the
inquests were taken ; for the counsel of the defend-
ant, when the causes were called on, refused to an-
swer the court whether there was any defence, think-
ing that he was not bound to do so, and in conse-
quence of this silence the inquests were taken. ·

*Per Curiam*, delivered by SPENCER, J. The in-
quest is regular. Counsel, if present, ought to answer
whether he believes there is a defence. The time at
which a trial shall come on, is not the privilege of a
defendant, but is adopted from a regard to the se-
niority of issues. Infinite delay would take place in
cases where no dispute exists, if the counsel were to
be mute when required to state whether there be a
defence. It appears, however, that the defendant
has been discharged under an insolvent act, and by
accident has not been able to produce his discharge
to his attorney. But though the court will not decide
in this way, whether parol evidence might or might
not be given of its loss and contents, yet they will re-
gard the peculiar situation of parties. In this case
the defendant lives remote, and was from that cir-
cumstance, and infirmity, prevented from attending
to these suits at an earlier period. The moral obli-
gation, under which the defendant is supposed to la-
bour of paying his debts, is not to operate with the
court, unless a new liability has been incurred. From
the misconception of counsel, the remote distance of
the defendant, his infirmities, and his having a merito-

rious defence, the court grant the application upon payment of costs.

